IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

No. 4:17CR00137 JM

September 6, 2018
Little Rock, Arkansas
1:38 PM

DANNY RAY WILLIAMS, JR.,

Defendant.

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE JAMES M. MOODY, JR.,
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

On Behalf of the Government:

MR. MICHAEL GORDON, Assistant U.S. Attorney
U.S. Attorney's Office
425 West Capitol Avenue, Suite 500
Post Office Box 1229
Little Rock, Arkansas 72201-1229

On Behalf of the Defendant:

MR. DAVID R. CANNON, Attorney at Law
Cannon Law Firm, PLC
425 West Broadway, Suite A
North Little Rock, Arkansas 72114

Defendant present.

Proceedings reported by machine stenography and displayed in realtime; transcript prepared utilizing computer-aided transcription.

(Proceedings commencing in open court at 1:38 p.m.)

THE COURT: We are on the record in the United States versus Danny Ray Williams, Jr., Case Number 4:17CR137. Mr. Williams is present in court with his lawyer, David Cannon, and the government's represented by Michael Gordon. Mr. Williams, can I get you to raise your right hand?

**DANNY RAY WILLIAMS, DEFENDANT, DULY SWORN**

THE COURT: Mr. Williams, I need to make sure that you understand the significance of being under oath here today. If you were to misrepresent anything to me or perjure yourself, you could be charged independently with that crime. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If you were to withdraw your guilty plea under certain circumstances, anything you say here today can likely be used against you later. Do you understand that that's a possibility?

THE DEFENDANT: Yes, sir.

THE COURT: I want to ask you a couple questions. Can you give me your full name?

THE DEFENDANT: Danny Ray Williams, Jr.

THE COURT: Mr. Williams, how old are you?

THE DEFENDANT: 35.

THE COURT: What's your education?

THE DEFENDANT: GED.

THE COURT: So you can read, write, and understand the English language, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you taking any prescription medication that might affect your thinking today?

THE DEFENDANT: No, sir.

THE COURT: Are you under the influence of alcohol or any other drug?

THE DEFENDANT: No, sir.

THE COURT: Can you think of any reason why we should not proceed today?

THE DEFENDANT: No, sir.

THE COURT: Have you had ample opportunity to talk to Mr. Cannon about what's involved in pleading guilty to a felony?

THE DEFENDANT: Yes, sir.

THE COURT: Have you and Mr. Cannon discussed the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with Mr. Cannon's representation of you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel like you've had enough time with him?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Cannon, have you had a meaningful conversation with Mr. Williams?

MR. CANNON: I have, Your Honor.

THE COURT: Do you think he's competent to go forward with the proposed plea?

MR. CANNON: I do, Your Honor.

THE COURT: Then I will find Mr. Williams is competent to go forward with the proposed plea. Mr. Williams, you've been charged in Count 1 of the second superseding indictment with conspiracy to possess with intent to distribute a controlled substance, and in this particular instance, it's actual methamphetamine of 50 grams or more, which is a violation of Title 21, Section 846. The statutory penalties for that crime are not less than ten years and not more than life and not more than a 10 million-dollar fine with a special assessment of $100, and not less than five years of supervised release. Do you realize that if you plead guilty and I accept your guilty plea, I'm going to be required by law to sentence you to not less than ten years and not more than life?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Mr. Cannon, is there any potential that Mr. Williams will qualify as a career or armed career criminal?

MR. CANNON: Yes, Your Honor. He and I have had discussions about that and some of it's going to come down to

interpretation of the offenses that are involved.

THE COURT: Mr. Williams, I need you to make sure -- I need to make sure that you understand that with regard to a career criminal, if you qualify, that can have an upward effect on your guideline range. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if you're considered an armed career criminal, that would take you to not less than 15 years to life. Do you understand that that's a possibility?

THE DEFENDANT: Yes, sir.

THE COURT: And you want to go through with this plea anyway?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Mr. Williams, I'm going to take you through some rights that you'll be giving up by pleading guilty. These are in your plea agreement, but I want to go over them orally with you. You can plead guilty, not guilty, or with consent of the Court, you could plead nolo contendere. If you plead not guilty, you're entitled to several rights. You'd have the right to be presumed innocent until and unless the government proved you guilty beyond a reasonable doubt. You'd have a right to a lawyer and have Mr. Cannon present with you at every critical stage of the proceedings including trial. You'd have a right to a trial by jury of your peers and that would be 12 randomly selected voters out of this district and

this division.

At trial, you could confront your accusers and, through Mr. Cannon, you could cross-examine the witnesses and the exhibits received against you. At the end of the government's case, if you wanted to, you could put on your own witnesses and exhibits, but you wouldn't have to do anything because the government would maintain the burden of proving you guilty throughout the trial. In addition to other kinds of evidence, if you wanted to take the witness stand and testify in your own behalf, you'd have a right to, but you'd also have a right to remain silent. If you decided to remain silent and you and your lawyer asked me to, I would tell the jury not to hold it against you and I wouldn't let Mr. Gordon argue that simply because you didn't defend yourself, you must be guilty.

However, if you plead guilty and I accept it, there won't be any trial and you'll be found guilty on your guilty plea. Do you understand that this is a consequence of pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: The United States Sentencing Commission has come up with guidelines, and you indicated that you've talked to Mr. Cannon about these. Correct?

THE DEFENDANT: Yes, sir.

THE COURT: I want you to understand that I'm not bound to give you a guideline sentence. In other words, the

guidelines are not mandatory. We will calculate a guideline sentence for you, but if it turns out that your guideline is higher than you expected, that won't be a reason to withdraw your guilty plea. Do you understand this?

THE DEFENDANT: Yes, sir.

THE COURT: I'm not required to give you a guideline sentence. Even if we calculate one and if I sentence you above your guideline range, that won't be a reason to withdraw your guilty plea. Do you understand this?

THE DEFENDANT: Yes, sir.

THE COURT: Parole has been abolished, and if you're sentenced to prison, you will not be released early on parole. If it turns out that your sentence is more severe than you expected, that won't be a reason to withdraw your guilty plea. Understood?

THE DEFENDANT: Yes, sir.

THE COURT: Your sentence will include a term of supervised release following imprisonment. If you violate the conditions of your release, I can revoke you and send you back to prison. If that's the case, your revocation sentence when coupled with your original sentence could exceed the statutory maximum. Do you understand that this is a possibility?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I need to advise you that I'm not involved in plea bargaining in any way and I'm not bound by any

agreement that you have with the government or that Mr. Cannon has with Mr. Gordon. I listen to their recommendations, but I'm not required to follow them. Do you understand this?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have a copy of the plea agreement in front of you?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Have you read the entire agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything about the plea agreement you do not understand?

THE DEFENDANT: No, sir.

THE COURT: Do you think you've had ample time with your lawyer to discuss the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you think it's in your best interest to enter into the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Have you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Have any promises been made to you to get you to plead guilty other than those contained in your plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anybody threatened you to get you to

plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Mr. Gordon, can you take me through the plea agreement, please?

MR. GORDON: I will. Thank you. Under the plea agreement, Mr. Williams will plead guilty to Count 1 of the second superseding indictment and the United States will ask the Court to dismiss the remaining charges against him. In paragraph 4 in addition to the waivers already covered by the Court, Mr. Williams agrees to waive his right to appeal and to collaterally attack his conviction and sentence in this case except for claims of prosecutorial misconduct and ineffective assistance of counsel or if he's sentenced above the advisory guideline range. In paragraph 5, the parties stipulate that the amount of drugs involved in the offense is at least 50 grams but less than 150 grams of methamphetamine actual which creates a base offense level of 30.

The parties are going to allow the Court to determine three issues at sentencing. The first one is whether the base offense level should be increased by two levels for possessing a firearm. The second is whether the offense level should be increased by two levels because the defendant maintained a premises for the purpose of distributing a controlled substance, and finally, third, whether Mr. Williams should receive an increase for his role in this case. Mr. Williams is

eligible for a two-level reduction for acceptance of responsibility with the possibility of a third level at sentencing. Neither side will seek any other increases or decreases under 2D1.1 or Chapter 3 of the guidelines except for those enumerated in the plea agreement. The United States will not seek an increased punishment based upon Mr. Williams's prior convictions under Title 21, United States Code, Section 851.

We further agree that if Mr. Williams meets the requirements of Section 4B1.1 of the guidelines, then nothing in this plea agreement shall prevent his offense level and criminal history category from being calculated and applied according to that section.

THE COURT: Mr. Williams, I want to direct you to page 2, paragraph 4. That paragraph in bold type says Waivers and it goes all the way through page 3 to the top of page 4. And have you gone over paragraph 4 with Mr. Cannon?

THE DEFENDANT: Yes, sir.

THE COURT: Do you realize that you're giving up virtually every right of appeal that you have by entering into this plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Did what Mr. Gordon say ring true to you and is consistent with your understanding of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Williams, I'm about to ask Mr. Gordon to tell me what he would prove at trial and I want you to listen carefully because I'm going to ask you to admit or deny these facts.

THE DEFENDANT: Okay.

THE COURT: Go ahead, Mr. Gordon.

MR. GORDON: Beginning in February 2017, agents with the FBI, the second judicial district drug task force, and the Arkansas State Police used a confidential informant to make controlled purchases of methamphetamine from the defendant, Danny Ray Williams Jr., and co-defendant, Timothy Peel, on five occasions. During each of these controlled purchases, communications between the defendants and the informants as well as the drug transactions were audio and/or video recorded. For example, in early February 2017, Mr. Williams quoted the informant a price of 650 to 700 dollars for an ounce of methamphetamine. On February 9th, 2017, Mr. Williams and the informant had multiple contacts about trying to do the drug transaction that day, but it got delayed to the next day.

On February 10th, 2017, Mr. Williams asked for the informant's phone number and told the informant he would sell him or her an ounce of methamphetamine for $650. Later that day, Timothy Peel started contacting the informant at the phone number the informant had given to Mr. Williams. Peel informed

the informant that he was on his way and Mr. Peel eventually arrived at Church and Beacon Street. I'm not sure if that's how you say that. But Beacon Street in a gray Dodge Charger. The informant walked up to the driver's side, gave Mr. Peel $650, and then was handed approximately 25 grams of methamphetamine by Mr. Peel.

Those drugs were later confirmed by the state crime lab to be 24.2216 grams of methamphetamine which was 83.9 percent pure or 20.32 grams of methamphetamine actual. The informant later purchased methamphetamine from Mr. Williams and/or Mr. Peel four more times: Two buys of one ounce each on February 13th of 2017, one ounce on February 15th of 2017, and two more ounces on April 5th of 2017.

THE COURT: Mr. Williams, do you have any questions of me before we proceed further?

THE DEFENDANT: No, sir.

THE COURT: If this case were to go to trial, do you believe that the government could prove each and every fact that Mr. Gordon just said?

THE DEFENDANT: Yes, sir.

THE COURT: Is that because they're true?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Williams, do you want to plead guilty to Count 1 of the superseding indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Then how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Is that because you are in fact guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Cannon, do you know of any reason why I shouldn't accept his guilty plea?

THE DEFENDANT: Unfortunately, I do not, Your Honor.

THE COURT: Why do you say unfortunately?

MR. CANNON: Well, it's never easy pleading guilty, Your Honor. I wish there was something I could do to make it better for my client.

THE COURT: All right. If that's the only reason, then I'm okay with that. Then I find that the offense charged in Count 1 of the second superseding indictment was committed and that Mr. Williams, before the Court, actually committed the crime. I further find that Mr. Williams is entering the plea voluntarily with full knowledge of the facts and the plea of guilty is accepted. Is there a motion from the government, Mr. Gordon, on the remaining counts?

MR. GORDON: Your Honor, we'd ask the Court to dismiss the remaining counts against Mr. Williams in this indictment and any underlying indictments.

THE COURT: I will do it. Mr. Williams, we're going to have a presentence report prepared and sometimes that can take 60 to 90 days. Once it's completed, you'll be given a

copy of that report and it's important that you go over it very carefully, making sure that everything is correct and making sure that it all applies to you. With a name as common as Williams, you might be getting credit for something some other Mr. Williams did that you don't need credit for. So make sure -- you're nodding your head, so you understand what I'm telling you to watch out for?

THE DEFENDANT: I got a few in there right now that I don't know nothing about.

THE COURT: Well, to the extent you find anything that's inaccurate or doesn't apply to you, I want you to bring it to Mr. Cannon's attention, and he and Mr. Gordon will work out what problems they can, and I'll work out what problems they can't work out at your sentencing. Fair enough?

THE DEFENDANT: Yes, sir.

THE COURT: In the meantime, if you have any questions, I suggest you ask Mr. Cannon and if he can't answer them, we'll do our best to get them answered at your sentencing. Mr. Cannon, can you think of anything else we need to do before we go off the record?

MR. CANNON: I cannot, Your Honor.

THE COURT: Mr. Gordon?

MR. GORDON: No, Your Honor.

THE COURT: All right. I'll remand Mr. Williams at this time pending sentencing, and court will be in recess.

(Proceedings adjourned at 1:55 p.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

/s/ Karen Dellinger, RMR, CRR, CCR
----------------------------------
United States Court Reporter

Date: September 25, 2020