IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

No. 4:17CR00137 JM

September 12, 2019
Little Rock, Arkansas
11:10 AM

DANNY RAY WILLIAMS, JR.,

Defendant.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JAMES M. MOODY, JR.,
UNITED STATES DISTRICT JUDGE

___________________

APPEARANCES:

On Behalf of the Government:

MR. MICHAEL GORDON, Assistant U.S. Attorney
U.S. Attorney's Office
425 West Capitol Avenue, Suite 500
Post Office Box 1229
Little Rock, Arkansas 72201-1229

On Behalf of the Defendant:

MR. DAVID R. CANNON, Attorney at Law
Cannon Law Firm, PLC
425 West Broadway, Suite A
North Little Rock, Arkansas 72114

Defendant present.

Proceedings reported by machine stenography and displayed in realtime; transcript prepared utilizing computer-aided transcription.

(Proceedings commencing in open court at 11:10 a.m.)

THE COURT: We are on the record in the United States versus Danny Ray Williams, Jr., Case Number 4:17CR137. Mr. Williams is present in court with his lawyer, David Cannon, and the government's represented by Michael Gordon.

Mr. Williams, the way this proceeding is going to work is we are going to work our way through your presentence report. Today we're going to have more to talk about usually than we do on a presentence report so that may take a while, but once we work our way through those issues, that's going to allow me to calculate your guideline range. Once I calculate your guideline range, I will announce my sentencing options and then I'll give Mr. Cannon an opportunity to speak on your behalf. Once he's done, you can decide if you would like to speak but you're not required to. That's completely up to you. And then I'll hear from Mr. Gordon, and then I will announce my sentence.

If at any time during these proceedings if you have a question of me or Mr. Cannon, I'm going to invite you to interrupt me. You can raise your hand, nudge Mr. Cannon, say excuse me, Judge, I got a question. If that's the case, I would like you to run it past Mr. Cannon before you speak out loud. Because I don't want you to cause yourself any problems by asking me a question you should have asked him. Fair enough?

THE DEFENDANT: Okay.

THE COURT: Can I assume that if you don't interrupt me that you do understand what's going on?

THE DEFENDANT: Yes, sir.

THE COURT: I need to ask you before we go any further if you're satisfied with Mr. Cannon's services to you as your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you think that there's any reason you should be allowed to withdraw your guilty plea?

THE DEFENDANT: Not at the moment.

THE COURT: Do you even think it's in your best interest to try at the moment, so to speak?

THE DEFENDANT: I really don't know how to answer that question, Your Honor.

THE COURT: Well, do you think that there's any legal reason why you should be able to withdraw your guilty plea? And you said no. And my next question is: Do you think it's in your best interest to even try to withdraw your guilty plea? Because when we took your plea, that's what you wanted to do. And I'm just trying to ask you whether or not you think it's even in your best interest to try.

THE DEFENDANT: I really don't want no plea deal.

THE COURT: Pardon me?

THE DEFENDANT: I really don't want no plea deal.

THE COURT: You really don't want a what?

THE DEFENDANT: Plea deal.

THE COURT: You've already pled, and I'm trying to figure out whether or not you think there's a legal basis for you to withdraw your guilty plea. And you said no, but now you've decided that you don't want to?

THE DEFENDANT: I really didn't. I've been writing for months trying to withdraw. I don't see -- I read the plea agreement, me and my attorney, and we went over the plea agreement over the phone, and once I read it, I really don't see nothing that's helping me in it.

THE COURT: Mr. Williams, I asked you at your plea have you read your plea agreement before you pled guilty and you said yes. And I asked you is there anything about it you do not understand and you said no. So I'm trying to figure out why you pled guilty after you read your plea agreement if you're claiming that you hadn't read it, because you told me you did last time.

THE DEFENDANT: I read parts of it. I didn't read it all. But once I had a chance to read it, it really ain't helping me. It ain't did nothing for me. They said they took away some charges, but I've still got the offense level of them charges.

THE COURT: I have not received any paperwork or any request from you to withdraw your guilty plea. Are you telling

me that you have instructed your lawyer to file a motion to withdraw your guilty plea and that hadn't happened?

THE DEFENDANT: I wrote the courts and everything. I wrote a letter to you personally through the courts and all that. 600 West Capitol Avenue, Suite 149-A.

MR. CANNON: Your Honor --

THE DEFENDANT: I got file marked copies.

THE COURT: Go ahead, Mr. Cannon. I asked you to wait till he finished.

MR. CANNON: Your Honor, he did write me about wanting to withdraw his guilty plea. I first laid out the legal standard for withdrawing a guilty plea and asked him which part of that wasn't met, and he didn't. And so I came -- I met with him down in Fordyce, came back to my office after that meeting, was trying to draft one, and then I got notice from the Court about a letter he sent to the Court asking to withdraw his guilty plea. And the information I got was do you want to talk to your client about this before.

So I went back down there and met with him I want to say about three or four weeks ago. And when I went down there, he said no, I'm good with it, don't worry about that. And we were concentrating on our arguments to the objections on the presentence report at that point in time. I believe we met for about an hour and a half on that meeting, Your Honor. And at that time, it was my understanding he did not wish me to go

forward with a motion to withdraw his guilty plea. So that's why I did not file one, because after meeting with him in person, he said he didn't want one.

THE COURT: Understood.

MR. CANNON: Your Honor, I can forward the Court a copy of the letter. I have it in my email.

THE COURT: No, it's not that. I remember now that since he was represented, I took his letter to me to mean that I should direct it to you for you to decide whether or not to file a motion. And I do recall that now. And that since no motion was filed, I assumed y'all worked that out. And that wasn't for me to represent Mr. Williams on that situation. Mr. Williams, if it's your desire to file a motion to withdraw your guilty plea, then I guess I'm inclined to postpone the sentencing.

THE DEFENDANT: Yes, Your Honor. I had asked my attorney about the --

THE COURT: I've been given the letter that was addressed to Mr. Cannon dated July 18th of 2019. And that same date, one was received that was filed to me.

THE DEFENDANT: Before I wrote the letters, I had got -- I was in the hallway --

THE COURT: Can you pull the mic a little bit closer to you? That's my trouble, Mr. Williams. Thank you.

THE DEFENDANT: Before I had sent them letters, I

had talked to another attorney and she said don't notify her name and all that, but she said that the lawyers was getting together with the new law because they said that we may not qualify because we pled guilty. So I asked her, I pled guilty to a certain thing, but I didn't plead guilty to my PSI. She said, well, the lawyers will have to get with the judge and do a withdrawal. When Mr. Cannon came to see me, he said the same thing. He stated that if I don't qualify for the new law, that you were making me bring back the withdrawal plea, to do a withdrawal plea, and then come back and do it again.

So I asked him, So what do you think? He said, I don't know. He said if that doesn't work, you'll have to file a motion to say that I was ineffective of counsel. I said, Well, withdrawal. I hadn't heard from him. I had people call him, I write letters. They on copy I wrote letters. Before I wrote them letters, I was writing him personally straight through to the mail.

THE COURT: Yes, sir, and I don't have access to, nor should I have any access to any correspondence that you send to your lawyer. Now, if you file them with the Court, I do have access to them.

THE DEFENDANT: That's what made me start filing with the courts because he wasn't responding to none of my letters. I pled guilty September 6th of last year. It's now September 12th. Within that year, I seen him twice. Within

that year, I haven't talked to him none, no response back, and then one day he came to see me. He said he sent a letter, his secretary sent a letter to Mason, Tennessee because she thought I was there. I've been over here at this jail for nine months. I been writing you from this jail.

THE COURT: Mr. Williams, I've been handed what looks like six handwritten letters that you wrote.

THE DEFENDANT: Dating back to July.

THE COURT: Correct. Four of those letters were written to Mr. Cannon and they were filed with the Court. One was written to the United States Marshal's Service, and then the one that you mentioned or I mentioned on July 18th of this year was written to me really asking whether or not you were getting communication out from your lawyer.

THE DEFENDANT: Letting you know that I wasn't getting communication with my lawyer.

THE COURT: That's fair enough. The subject was communication or lack thereof with your lawyer, and I don't want to -- we'll put it like that. It says you wrote the courts about the lack of communication between me and my attorney. You said I hadn't heard from him in a while. You said you wanted me to grant you a status hearing. And that's all you wrote to me. And it's my recollection and my practice that I would have sent this letter that you sent to me to Mr. Cannon and said, Mr. Cannon, your client has expressed some

dissatisfaction with the level of communication and you might want to get with him and work that out, because I don't get involved in that until you come and tell me that we can't communicate and I want a new lawyer, etc., etc.

So those are the only communications that I have received and that was back in July. So I guess at this point, if you are indicating that you wish to file a motion to withdraw your guilty plea, then I'm going to delay or continue this sentencing hearing and you can decide whether or not you want to file that or not. I'll rule on that and either allow you to withdraw your guilty plea or I won't and I'll reset your sentencing. But I don't know until I've seen the reasons why you think you're entitled to withdraw your guilty plea. Mr. Cannon, is there any objection to that course of action?

MR. CANNON: No, Your Honor. I think at this time, I'll probably have to formalize it with a formal motion, but I think it's probably better that I be relieved. Mr. Williams apparently is not happy with my services or my level of communication.

THE COURT: That's the problem. He just told me he was satisfied with your services when I asked him that initial question. And then, Mr. Williams, are you claiming -- I'm confused. I asked you are you satisfied with Mr. Cannon as your lawyer and you just told me yes, and now you're telling me that he hadn't filed things he wants you to file. So which is

it?

THE DEFENDANT: He hadn't.

THE COURT: Are you satisfied with Mr. Cannon's representation of you or not? This will be the third lawyer that I'm going to assign to you to decide whether or not you get -- they file a motion to withdraw your guilty plea. So until I appoint a new lawyer, Mr. Cannon, you're not relieved. Because I don't want a gap in coverage so to speak. But I would anticipate once we appoint someone likely from the CJA panel to represent Mr. Williams, that you'll be tentatively relieved of counsel, but I ask that you stay in communication with Mr. Williams until we get him lined out.

Mr. Gordon, is there anything from the government you want to say? I know we were ready, set, go, but I don't know with Mr. Williams' comment that he's not satisfied with his current counsel and would like to file a motion to withdraw his guilty plea, that we have anywhere to go.

MR. GORDON: I agree. But I think what really is going on is that Mr. Williams has buyer's remorse. He was hoping he wouldn't be a career offender.

THE COURT: All arguments on whether or not I grant or deny the motion to withdraw his guilty plea, I understand that that may be where we're headed, but I guess what I'm saying is, do you have any objection to us continuing this sentencing hearing pending his decision to file that motion?

MR. GORDON: No.

THE COURT: All right. Then that's what we'll do. I'll remand Mr. Williams at this time. I'll see if we can get him a new lawyer and we'll wait to see from that new lawyer what this case brings. Thank y'all for your attention to this matter and we'll reset.

(Proceedings adjourned at 11:28 a.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

/s/ Karen Dellinger, RMR, CRR, CCR
----------------------------------
United States Court Reporter

Date: September 24, 2020